(No. 24993.—

WYNNETT W. McILVAINE *et al.* Appellants, *vs.* THE CITY NATIONAL BANK AND TRUST COMPANY *et al.* Appellees.

*Opinion filed June 15, 1939.*

BREEN, LYLE & O'KEEFFE, and SEYFARTH & ATWOOD, (JAMES W. BREEN, and JOHN H. LYLE, of counsel,) for appellants.

PAM & HURD, MICHAEL J. AHERN, and ARTHUR T. LEONARD, (HARRY BOYD HURD, ALEXANDER F. REICHMANN, and ANDREW J. DALLSTREAM, of counsel,) for appellees.

Per CURIAM: On May 14, 1937, W. W. McIlvaine, a stockholder of the Central Republic Trust Company, filed a complaint against the City National Bank and Trust Company of Chicago, Charles G. Dawes, the Central Republic Trust Company, and Charles H. Albers, receiver of the Central Republic Trust Company to enforce a derivative cause of action in favor of the Central Republic Trust Company, to recover for the value of the good-will of that bank which it was alleged was appropriated by the City National Bank and Trust Company, without any consideration. Later, other stockholders were joined as parties plaintiff and a supplemental complaint was filed in which it was alleged that the Central Republic Trust Company

was organized on July 25, 1931, as a result of mergers and consolidations of a number of Chicago banks, with a capital of $14,000,000, and from that date carried on an extensive banking and trust business until October 5, 1932. That Charles G. Dawes had been connected with some of these institutions since 1902 and acting as chief advisor for, and, in conjunction with the officers and directors, managed and dictated the policies, activities and business affairs of the Central Republic Trust Company. That it was one of the five largest banks in the city of Chicago, and, as such, possessed valuable good-will. That its deposits dropped during the depression, but that the rate of withdrawals was no greater than other banks similarly situated. That Charles G. Dawes was appointed a director of the Reconstruction Finance Corporation in February, 1932, and continued to act as such until his resignation in June, 1932, and that shortly after his resignation the Central Republic Trust Company applied to the Reconstruction Finance Corporation for a loan of $95,000,000, which was granted. That negotiations were then started for the organization of a new national bank to take the place of the Central Republic Trust Company, and that they were successfully consummated on October 4, 1932, and two days later the City National Bank and Trust Company of Chicago opened for business in the same quarters with practically the same officers and personnel, and that the Central Republic Trust Company did no more banking business after that date.

It was further alleged that certain securities which had been transferred to the Reconstruction Finance Corporation as collateral to the loan above mentioned, by the Central Republic Trust Company, were purchased by the City National Bank and Trust Company, and that since that date that bank has been engaged in the general banking business which has continued to increase and develop. That there was also acquired by the new bank a valuable trust and real estate department which has continued to grow and

prosper. That the good-will of the banking and the real estate and trust departments was of great value and no consideration was ever paid to the Central Republic Trust Company by the new bank therefor. It was further alleged that on November 21, 1934, a receiver was appointed for the Central Republic Trust Company by the Auditor of Public Accounts of the State of Illinois pursuant to section 11 of the Illinois Banking act (Ill. Rev. Stat. 1937, chap. 16½, par. 11) and that he has refused, after demand, to institute a suit to recover from the City National Bank and Trust Company of Chicago the value of the good-will of the old bank. That since that time the Reconstruction Finance Corporation has instituted a suit and has obtained judgments against the stockholders of the old bank for their superadded stockholders' liability.

The decree of the trial court dismissed the complaint and denied leave to file a second amended and supplemental complaint on the grounds that (1) the good-will of the old bank was of no value on October 5 and 6, 1932; (2) that it was transferred to the new bank as part of other transfers; (3) that the transfers were fully executed at the time of the filing of the present suit; (4) that the cause of action of the plaintiffs is exclusively vested in the Auditor of Public Accounts; (5) that plaintiffs could enforce this cause of action only by application to the court in charge of the liquidation; (6) that the plaintiffs are barred by *laches,* and (7) that the second amended and supplemental complaint is subject to the same defects as the first.

At the outset we are confronted with the question of our jurisdiction to entertain this appeal. The appellants contend that the holding of the trial court that the right to maintain the present suit vests exclusively in the receiver appointed by the Auditor of Public Accounts by virtue of section 11 of the Banking act (Ill. Rev. Stat. 1937, chap. 16½, par. 11) deprives them of property without due process of law contrary to the fourteenth amendment of the United States constitution, and section 2 of article 2 of the

constitution of the State of Illinois. Undoubtedly that holding involved a construction of section 11 of the Banking act, but it does not necessarily follow that such a holding involved the validity of that act, and this is true even though this decision was predicated upon an interpretation of that act. Before this court will take jurisdiction on the ground that a constitutional question is involved, it must appear from the record that a fairly debatable constitutional question of the character mentioned in the Civil Practice act was urged on the lower court, the ruling on which is preserved in the record for our review and error assigned thereon in this court. (*Cooper* v. *Palais Royal Theatre Co.* 320 Ill. 44.) As has been already indicated, the appellants by this appeal, do not, and did not in the court below, ask for a construction of any constitutional provisions, State or Federal. They did not contend that any part of section 11 of the Banking act was unconstitutional, but contended that the interpretation placed upon it by the trial court rendered it unconstitutional by depriving them of an alleged right of action. The constitutional requirement of due process of law is not a guarantee that the court shall not commit error in the trial of causes or a guarantee against erroneous or unjust decisions by courts which have jurisdiction of the parties and subject matter. If errors are committed or erroneous or unjust decisions are rendered they may be corrected in the manner provided by law for the correction of such errors, but mere error in a judgment or decree does not deprive the losing party of the benefit of due process of law. *Foreman-State Nat. Bank* v. *Sistek,* 358 Ill. 525.

We are of the opinion that no debatable constitutional question was raised and that, therefore, this court is without jurisdiction to consider the errors assigned.

The cause is transferred to the Appellate Court for the First District.

*Cause transferred.*